## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  9:14-CV-80429-ROSENBERG/REINHART

CHARLES EDWARD DAVIS, II,

     Plaintiff,

v.

SHERIFF RIC BRADSHAW, *et al.*,

     Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' RENEWED MOTION FOR FINAL SUMMARY JUDGMENT

This matter comes before the Court on Defendants Sheriff Ric Bradshaw, Deputy Narda Jones, and Deputy Horace Thompkins's Renewed Motion for Final Summary Judgment.  DE 228. The Court has carefully reviewed the Motion, Plaintiff's Response thereto [DE 233], Defendants' Reply [DE 237], and the entire record, and is otherwise fully advised in the premises.

For the reasons set forth below, the Renewed Motion for Final Summary Judgment is granted in part and denied in part.

### I.     UNDISPUTED FACTS

In June 2013, Plaintiff Charles Edward Davis, II ("Davis") was an inmate who had been transferred from prison to the Palm Beach County Jail ("the jail") because he was a witness in a criminal prosecution.  DE 229 and 234 ¶¶ 1-2.  He was placed in protective custody at the jail and was assigned to the South 6-D dormitory.  *Id.* ¶ 3.  At some point, he expressed to a detective that he believed that another inmate at the jail, Marquis Jones ("inmate Jones"), might hurt him.  *Id.* ¶ 17.

On June 25, 2013, Defendant Deputy Horace Thompkins ("Deputy Thompkins") asked Davis whether he would like to go to recreation, and Davis said yes. *Id.* ¶ 26. Deputy Thompkins opened the door to Davis's cell and instructed him to go toward the recreation area. *Id.* ¶ 28. Inmates must pass through a small, glass-enclosed vestibule to get from the South 6-D dormitory to the recreation area. *Id.* ¶ 29. According to jail policy, inmates are to be handcuffed upon leaving their cells and passing through the vestibule; handcuffs are to be removed in the recreation area. *Id.* ¶ 30. On this day, however, Deputy Thompkins was "distracted" and did not handcuff the inmates going to recreation. *Id.* ¶ 31.

Davis was to go to recreation with three other inmates who were also in protective custody, including inmate Jones. *Id.* He had been going to recreation with inmate Jones for at least a month. *Id.* ¶ 24; DE 234-1 at 110-11. On the way into the vestibule, Davis saw inmate Jones and Deputy Thompkins standing near a water dispenser in the South 6-D dormitory and saw inmate Jones filling a cup with hot water. DE 229 and 234 ¶¶ 32, 36. Inmates are permitted to have hot water but, according to jail policy, are not permitted to take water or any item other than a towel into the recreation area. *Id.* ¶¶ 33, 34. Defendant Deputy Narda Jones ("Deputy Jones") told the inmates to put away any cups and books before entering the recreation area. *Id.* ¶ 33.

Inmate Jones took his cup into the vestibule. *Id.* ¶ 35. Deputy Jones instructed him that he was not to have the cup with him, but she did not do anything further to remove the cup. *Id.* ¶ 38. Davis became nervous when he noticed inmate Jones "fidgeting" with the cup and with his waistband. *Id.* ¶ 40; DE 234-1 at 105-06.

Davis approached Deputy Thompkins and asked to be excused from the vestibule and to take some books back to his cell. DE 229 and 234 ¶ 41. Deputy Thompkins stated, "Hold on a

2

minute.  We're going to handle this like men."  *Id.* ¶ 42.  Deputy Thompkins asked the inmate in charge of the book cart to bring the cart and to provide Davis with books.  *Id.*; DE 234-1 at 106. Davis stated, "That's okay.  I'm ready to go back."  DE 229 and 234 ¶ 43; DE 234-1 at 106-07. Deputy Thompkins stated, "No, we're going to handle this like men."  DE 229 and 234 ¶ 43; DE 234-1 at 107.

Deputy Thompkins stepped to one side.  DE 229 and 234 ¶ 43.  Inmate Jones then threw hot water into Davis's face.  *Id.*  Inmate Jones and Davis began to fight on the vestibule floor, with inmate Jones attempting to stab Davis with a shank.  *Id.*; DE 234-1 at 107.

Deputy Jones was not in the vestibule at the time.  DE 229 and 234 ¶ 45; DE 234-1 at 117; DE 234-3 at 12.  She heard what sounded like fighting and told another deputy, Deputy Wyche, that it sounded like there was a fight in the vestibule.  DE 229 and 234 ¶¶ 45, 46.  Deputy Wyche responded to break up the fight.  *Id.* ¶ 46; DE 234-2 at 83-84.  Deputy Jones did not do anything further in response to the fight.  DE 229 and 234 ¶ 46.  Deputy Thompkins did not physically intervene in the fight, but he held Davis on the floor while Deputy Wyche was handcuffing inmate Jones.  *Id.* ¶ 77; DE 234-2 at 84-85.  Davis was transported to a hospital and received treatment for second-degree burns.  DE 229 and 234 ¶ 50.

## II.    PROCEDURAL BACKGROUND

Davis filed this lawsuit in March 2014.  DE 1.  The case proceeded through Motions to Dismiss and Motions for Summary Judgment in front of a different District Court Judge before the case was reassigned to this Court in August 2019.  *See* DE 195.

Davis then filed a Second Amended Complaint that raised civil rights claims under 42 U.S.C. § 1983 against Deputies Thompkins and Jones for failure to protect and failure to

intervene (Count I), a negligence claim against Deputy Thompkins (Count II), a negligence claim against Deputy Jones (Count III), and negligence claims against Defendant Sheriff Ric Bradshaw ("Sheriff Bradshaw") in his official capacity and against Palm Beach County (Count IV). DE 200. Davis subsequently dismissed his claim against Palm Beach County. DE 215; DE 218. The Court denied the remaining Defendants' Motion to Dismiss the Second Amended Complaint. DE 212; DE 221. Defendants now move for final summary judgment. DE 228.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact court return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). A court ruling on a summary judgment motion views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). The court does not weigh conflicting evidence or make credibility determinations. *Id.* Upon discovery of a genuine dispute of material fact, the court must deny summary judgment and proceed to trial. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

If the movant shows that there is no genuine dispute as to a material fact, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). The non-moving party does not satisfy this burden "if the rebuttal evidence is merely colorable, or is not significantly

probative of a disputed fact." *Jones*, 683 F.3d at 1292 (quotation marks omitted).  "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018).  The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones*, 683 F.3d at 1292 (quotation marks omitted). A mere scintilla of evidence supporting the non-moving party's position will not suffice.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

## IV.   ANALYSIS

### A.   Civil Rights Claims

As an initial matter, Davis argues that the prior Judge assigned to this case already determined that there were genuine issues for trial on his civil rights claims against Deputies Thompkins and Jones and that the prior Judge's ruling is the law of the case, such that summary judgment on Count I must be denied.  This argument is unavailing for several reasons.  Law of the case applies only where there has been a final judgment, and there has been no final judgment in this action.  *Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991) (explaining that a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court).  The prior Judge cited only to Davis's Complaint as the evidence from Davis that created a genuine issue of fact.  *See* DE 102 at 16-18; DE 107.  That Complaint, filed at a time when Davis was proceeding *pro se*, has been amended twice since the previous summary judgment ruling.  *See* DE 151; DE 200.  In addition, when a moving party comes forward with evidence showing that it is entitled to judgment as a matter of law, the non-moving party must present evidence beyond the pleadings showing why summary judgment is inappropriate.  *Fickling v.*

*United States*, 507 F.3d 1302, 1304 (11th Cir. 2007).  Finally, the discovery in this case has been substantially developed since the prior Judge's ruling in early 2016.  In fact, the key depositions on which Davis himself now relies have been taken since that time.  *See* DE 234-1; DE 234-2; DE 234-3.  For all of these reasons, the Court is not bound by the previous summary judgment ruling.

Defendants contend that Count I must be dismissed with prejudice because Davis failed to exhaust administrative remedies at the jail prior to filing his lawsuit.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  Lack of exhaustion is an affirmative defense that should be raised in a motion to dismiss.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (stating that a court may resolve factual issues upon a motion to dismiss for lack of exhaustion and that the exhaustion defense "is not ordinarily the proper subject for a summary judgment [motion]; instead it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment" (quotation marks omitted)).  A "defendant must raise the exhaustion defense in his first Rule 12 motion, otherwise the defense is forfeited and cannot be raised in a later motion under Rule 12."  *Brooks v. Warden*, 706 F. App'x 965, 968-69 (11th Cir. 2017) (citing Fed. R. Civ. P. 12(g)(2) and reasoning that such a rule prevents piecemeal litigation).

The Court treats as a Motion to Dismiss the portion of Defendants' Motion for Final Summary Judgment that seeks dismissal of Count I for lack of exhaustion.  *See Bryant*, 530 F.3d at 1374-75.  Defendants did not raise the exhaustion issue in their prior Motions to Dismiss

6

[DE 155; DE 212], in their prior Motions for Summary Judgment [DE 95; DE 98], or even as an affirmative defense in any of their Answers [DE 48; DE 53; DE 55; DE 222]. The two affidavits on which Defendants now rely to support their argument as to lack of exhaustion were signed in December 2016, before the filing of any Motions to Dismiss. *See* DE 229-12; DE 229-13. Thus, it cannot be said that Defendants previously lacked the evidence to support an argument on exhaustion. Defendants have forfeited their exhaustion defense and are not entitled to dismissal of Count I based on lack of exhaustion. *See Brooks*, 706 F. App'x at 968-69.

The Court now turns to the merits of Davis's civil rights claims. Deputies Thompkins and Jones argue that they are entitled to qualified immunity on those claims.

"Qualified immunity shields government officials from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a 'clearly established' constitutional right." *Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018). This shield allows officers to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018). Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks omitted).

To be entitled to qualified immunity, an officer must establish that he was acting within his discretionary authority during the incident at issue. *Manners*, 891 F.3d at 967. The officer proves that he was acting within his discretionary authority "by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir.

2011) (quotation marks omitted).  Davis does not dispute that Deputies Thompkins and Jones were acting within their discretionary authority at the relevant times on June 25, 2013.  *See Howard v. Gee*, 538 F. App'x 884, 887 (11th Cir. 2013) (stating that a correctional officer was acting within his discretionary authority when supervising inmates and maintaining security).

If an officer establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the officer violated a constitutional right that was clearly established at the time of the incident.  *Montanez*, 889 F.3d at 1207.  These two components may be analyzed in any order.  *Manners*, 891 F.3d at 968.  Both components must be shown for an officer to lose qualified immunity.  *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) (explaining that, where no constitutional violation occurred, an officer is entitled to qualified immunity).

Davis does not dispute that the Eighth Amendment applies to his constitutional claims because he was a convicted inmate at the time of the attack.  *See Purcell ex rel. Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1318 n.13 (11th Cir. 2005) (explaining that the Eighth Amendment applies to convicted inmates, while pretrial detainees' constitutional rights arise from the Fourteenth Amendment's Due Process Clause).  The Eighth Amendment's prohibition of cruel and unusual punishments requires correctional officers to take reasonable measures to guarantee inmate safety.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This includes a duty to protect inmates from violence at the hands of other inmates.  *Id.* at 833.  However, correctional officers are not liable for every injury that an inmate suffers due to another inmate.  *Id.* at 834.

To violate the Eighth Amendment, a correctional officer must have a sufficiently culpable state of mind.  *Id.*  An officer who lacked knowledge of a risk cannot be said to have inflicted

punishment.  *Id.* at 844.  Thus, only an officer's deliberate indifference to a substantial risk of serious harm to an inmate is a constitutional violation.  *Id.* at 829.

Deliberate indifference requires a showing that the officer was subjectively aware of a risk and did not respond reasonably to that risk.  *Id.* at 829, 844.  The officer must know of and disregard an excessive risk to inmate health or safety.  *Id.* at 837.  The officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*  The focus is on what the officer's mental attitude actually was, rather than on what it should have been.  *Id.* at 838-39 (explaining that an officer's failure to alleviate a significant risk that he should have perceived, but did not, is not a constitutional violation).  Deliberate indifference requires more than mere negligence and ordinary lack of due care for inmate safety.  *Id.* at 835; *see also Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (stating that even gross negligence is insufficient to show a constitutional violation).

A correctional officer does not escape liability by showing that, despite being aware of a substantial risk to inmate safety, he did not know that the inmate was especially likely to be assaulted by the specific assaulter.  *Farmer*, 511 U.S. at 843-44 (explaining that, where there is awareness of a substantial risk to inmate safety, it may be irrelevant that the officer could not guess beforehand precisely who would attack whom).  But the officer must be aware of specific facts showing a particularized threat or fear felt by the inmate.  *Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003).  Officers must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury and not simply a mere possibility.  *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) ("The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a

substantial risk of harm." (quotation marks omitted)).  A threat to an inmate that someone intends to harm him "conveys nothing about the nature of the anticipated risk" and is too vague and unspecific to rise to the level of a substantial risk.  *Id.* at 1237.

Davis contends that his status in protective custody supports a conclusion that Deputies Thompkins and Jones were subjectively aware of a serious risk.  He also contends that evidence indicates that he was classified as a "by-self" inmate at the time of the attack, meaning that he was supposed to be kept by himself at certain times.  *See, e.g.*, DE 229-6 at 10.[1]  In addition, he asserts that evidence shows that both he and his attorney had previously advised officers at the jail that Davis felt that he was in danger there because he was assisting law enforcement in criminal prosecutions.  *See, e.g.*, DE 229-9 at 5-6; DE 234-7; DE 234-8.  Davis argues that it was part of Deputies Thompkins and Jones's job to keep apprised of inmates' segregation statuses and of threats made against inmates.

Even if it is accepted for the purpose of ruling on the instant Motion that Davis had both protective-custody and "by-self" status at the time of the attack, that he and his attorney had expressed his fear that he was in danger, and that Deputies Thompkins and Jones were aware of these facts, Davis's status and general fear of danger are not *specific* facts showing a *particularized* threat or fear that would have demonstrated to the Deputies that he faced a strong likelihood of injury that was more than a mere possibility.  *See Marbury*, 936 F.3d at 1236-37; *Carter*, 352 F.3d

---

[1] The exhibit included in the record at DE 229-6 contains Segregation Summaries that do not designate Davis as "by-self" as of June 24, 2013, but do designate him as "by-self" on June 25.  For the purpose of ruling on the instant Motion, the Court accepts Davis's contention that he was classified as a "by-self" inmate at the time of the attack and need not examine whether this "by-self" designation was made prior to, or in response to, the attack by inmate Jones on June 25.

at 1349-50.  The Court must examine the record to determine whether there is evidence of specific facts of which the Deputies were aware that showed a particularized threat.

The parties agree that evidence shows that, at some point, Davis expressed to a detective that he believed that inmate Jones might hurt him.  DE 229 and 234 ¶ 17; *see also* DE 234-1 at 116.  It is questionable whether a statement that inmate Jones might hurt Davis elevated the likelihood of injury from "a mere possibility" to "strong."  *See Marbury*, 936 F.3d at 1236.  In any event, the evidence shows that Davis voiced his concern about inmate Jones only to the detective.  DE 234-1 at 116.  Davis cites to no evidence to indicate that Deputies Thompkins and Jones knew that he had expressed a concern about inmate Jones.

Davis points to the facts that the inmates were not handcuffed while they were in the vestibule and that inmate Jones was holding a cup of hot water.  Davis does not explain how these facts would have alerted Deputies Thompkins and Jones that he faced a substantial risk of serious harm.  While jail policy was that inmates were to be handcuffed while in the vestibule, a deviation from policy alone is insufficient to establish a constitutional violation.  *See Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013) (explaining that "the fact that the officers deviated from policy or were unreasonable in their actions—even grossly so—does not relieve Goodman of the burden of showing that the officers were subjectively aware of the risk"); *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) (stating that "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence").  Davis and inmate Jones were both on their way to the recreation area, where their handcuffs would have been removed in accordance with jail policy.  DE 229 and 234 ¶ 30.  And

Davis had been going to recreation with inmate Jones for at least a month prior to the attack.  *Id.*
¶ 24; DE 234-1 at 110-11.

As to inmate Jones's cup of hot water, inmates were permitted to have hot water.  DE 229
and 234 ¶ 34.  Inmates were not permitted to take cups into the recreation area, but Davis and
inmate Jones were not in the recreation area when the attack occurred.  *See id.* ¶ 33.  Davis himself
testified that inmates were permitted to take cups into the vestibule and to leave them there so they
would have water when they returned from recreation.  DE 234-1 at 119-20; *see also* DE 229-3 at
24-25 (testimony by a Major with the Palm Beach County Sheriff's Office that an inmate's
possession of a cup of hot water in the vestibule was not a policy violation).  The Court sees
nothing about inmate Jones's lack of handcuffs in the vestibule and his possession of a cup of hot
water in the vestibule that would have apprised Deputies Thompkins and Jones that Davis was in
danger.

Davis contends that he "voiced a specific concern to [Deputies Thompkins and Jones]
about the danger posed by [inmate] Jones moments before the attack" and that the Deputies
"willfully ignored [his] plea to be let out of the vestibule because of the danger posed by [inmate]
Jones."  DE 233 at 3, 7-8; DE 234 ¶ 20.  Davis does not point to any evidence that supports this
contention.  He cites to his own deposition testimony, but the cited portion contains no indication
that he expressed any concern about inmate Jones or about his safety more generally to either
Deputy.  Instead, Davis testified that he "asked to be excused from the vestibule [and] for books
to take back to [his] cell" and, when the book cart was being brought, stated, "That's okay.  I'm
ready to go back."  DE 234-1 at 106-07.  Davis has not come forward with evidence to indicate
that he advised Deputies Thompkins and Jones that he was in danger before the attack.

Finally, Davis maintains that Deputy Thompkins "verbally encouraged" inmate Jones to attack.  DE 233 at 3-4, 8.  Davis cites to Deputy Thompkins's statements, "Hold on a minute. We're going to handle this like men." and, "No, we're going to handle this like men."[2]  DE 234-1 at 106-07.  However, it is undisputed that Deputy Thompkins stated, "Hold on a minute.  We're going to handle this like men." after Davis had asked to be excused and for books to take to his cell and that Deputy Thompkins then asked the inmate in charge of the book cart to bring the cart and to provide Davis with books.  DE 229 and 234 ¶ 42; DE 234-1 at 106.  Davis provides no evidence to indicate that Deputy Thompkins's statements that they were "going to handle this like men" referred to inmate Jones.  Davis points to no evidence to indicate that he even believed that Deputy Thompkins's statements referred to inmate Jones.  Davis provides no evidence that would permit someone to reasonably infer from Deputy Thompkins's words that he knew that an attack on Davis was forthcoming.  *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324, 1326 (11th Cir. 1982) (explaining that an inference is reasonable if it is one that a reasonable and fair-minded person in the exercise of impartial judgment might draw from the evidence and that "an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation" (quotation marks omitted)).

Davis has not shown that there is a genuine issue for trial relating to whether Deputies Thompkins and Jones were subjectively aware of a substantial risk to him.  Because the record lacks evidence of deliberate indifference, the Deputies are entitled to qualified immunity and to summary judgment on Davis's claim that they violated the Constitution by failing to protect him.

---

[2] Davis asserts that Deputy Thompkins also stated, "Go ahead."  DE 233 at 4; DE 234 ¶¶ 21, 39, 42, 53, 78.  The evidence that Davis cites to support this assertion does not, in fact, indicate that Deputy Thompkins ever said, "Go ahead." or any similar words.  *See* DE 234-9.

Davis also seeks to hold Deputies Thompkins and Jones liable for their failure to intervene in inmate Jones's attack.  A correctional officer may be held liable under the Eighth Amendment for failing to intervene to protect an inmate from an ongoing assault by another inmate.  *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010).  However, the officer must have been in a position to intervene to be held liable.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009) (stating that it must "be true that the non-intervening officer was in a position to intervene yet failed to do so" (quotation marks omitted)); *Glispy v. Raymond*, No. 06-14269-CIV, 2009 WL 2762636, *3 (S.D. Fla. Aug. 28, 2009) (explaining that the non-intervening officer "must have a realistic opportunity to prevent the alleged illegal conduct" and cannot be held liable if "events occurred too quickly for the officer to intervene, or some other factual scenario made it impossible" to intervene).

Davis does not contend that Deputy Thompkins or Deputy Jones could have intervened in inmate Jones throwing the hot water, if neither Deputy had advance knowledge that inmate Jones would throw the water.  The Court cannot conceive how a person would have the time or ability to intervene while another person is in the process of throwing a single cup of hot water, much less do so safely without coming into contact with the water.  *See Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006) (explaining that "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence").

Davis does fault Deputy Thompkins for failing to intervene in the fight with inmate Jones on the vestibule floor and Deputy Jones for failing to herself respond when she heard what sounded like fighting.  However, Davis did not allege in the Second Amended Complaint that he suffered injuries as a result of fighting with inmate Jones.  And he does not now, at the summary judgment

14

stage, cite to any evidence or even argue that he suffered injuries as a result of the fight.  He did not respond to Defendants' argument on this point.  *See* DE 228 at 13-14.  Davis's only demonstrated injuries are the burns from being sprayed with the hot water.  He cannot prevail on his failure-to-intervene claim related to the fight when he cannot show that the Deputies' non-intervention caused injuries.  *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (requiring a plaintiff to produce evidence of causation to survive summary judgment on an Eighth Amendment § 1983 claim); *see also Marsh v. Butler Cty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (explaining that a plaintiff alleging an Eighth Amendment violation "must also show that the constitutional violation caused his injuries."), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Davis has not shown that there is a genuine issue for trial on his claim that Deputies Thompkins and Jones are liable for failing to intervene.  The Deputies are entitled to qualified immunity and to summary judgment on the failure-to-intervene claim.

Consequently, Deputies Thompkins and Jones are granted summary judgment on Davis's civil rights claims under 42 U.S.C. § 1983 for failure to protect and failure to intervene. Defendants' Motion for Summary Judgment as to Count I is granted.

### B.    Negligence Claims

Davis also raises negligence claims against Defendants in Counts II, III, and IV.  As to these claims, Defendants first argue that Davis failed to give timely notice as required under Fla. Stat. § 768.28(6)(a).  A tort action "may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within

3 years after such claim accrues."  Fla. Stat. § 768.28(6)(a).  Defendants concede that this requirement does not apply to Deputies Thompkins and Jones to the extent that they are sued in their individual capacities.  DE 237 at 10; *see Lundgren v. McDaniel*, 814 F.2d 600, 604-05 (11th Cir. 1987) (stating that § 768.28(6)(a)'s notice requirement does not apply to defendants in their individual capacities).

It is undisputed that Davis placed his written notices to the Palm Beach County Sheriff's Office and to the Department of Financial Services in the mail by June 25, 2016.  DE 234 and 238 ¶ 79.  Because June 25, 2016 was a Saturday, Davis had until June 27 to present the notices.  *See* Fla. R. Jud. Admin. 2.514(a)(1)(C) (providing that, when a time period specified in a statute is computed and the last day of the time period falls on a Saturday, Sunday, or legal holiday, the time period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday).[3]  Defendants assert, however, that the Sheriff's Office and the Department of Financial Services did not "receive" the mailings until one day later on June 28.  DE 229 ¶¶ 63, 64; DE 229-14 at 2; DE 229-15 at 2.

Defendants provide no authority to support their proposition that a § 768.28(6)(a) notice that is presented by mailing is "present[ed]" on the date that it is received, rather than on the date that it is mailed.  To be fair, Davis also provides no authority for a proposition that the notice is presented on the date of mailing.  And the Court has found no authority resolving whether the word "presents" as used in § 768.28(6)(a) refers to mailing or to receipt of mail.

---

[3] Defendants assert that Fla. R. Jud. Admin. 2.514(a) is inapplicable "if the statute itself speaks to the limitations period."  DE 237 at 10.  Defendants misread Rule 2.514(a), which states that the procedure for computing time in Rule 2.514(a) applies where a statute "does not specify a method of computing time."  The Court cannot see how the requirement in § 768.28(6)(a) that notice be presented "within 3 years after such claim accrues" constitutes the specification of "a method of computing time," as opposed to simply the specification of a deadline, and Defendants provide no support for such a proposition.

The Court concludes, however, that Davis presented timely notice in this case.   A conclusion that a defendant must receive a § 768.28(6)(a) notice within three years could lead to the dismissal of a claim due to factors beyond a plaintiff's control if, for example, a defendant failed or refused to pick up mail, if something were lost in the mail, or if mail delivery were suspended for some reason.   Such a dismissal would be absurd.   *See Regions Bank v. The Provident Bank, Inc.*, 345 F.3d 1267, 1276 (11th Cir. 2003) (stating that a court should avoid construing a statute in a way that produces absurd results).   The Court also takes guidance from Fla. R. Jud. Admin. 2.516(b)(2) which, while not directly on point because it relates to the service of pleadings and other documents filed in a court proceeding, provides that "[s]ervice by mail is complete upon mailing."   And the Court cannot ignore the fact that, even under Defendants' interpretation of § 768.28(6)(a), Davis presented the notices only one day after the deadline.   For these reasons, the Court concludes that Davis presented timely notice.

Defendants' final argument as to the negligence claims against Deputies Thompkins and Jones is that Davis did "not allege [in the Second Amended Complaint] that the conduct was made in bad faith, with malicious purpose or in a manner exhibiting wanton and willful disregard for human rights."   DE 228 at 18; DE 237 at 8-9 (arguing deficiencies in Davis's pleading).   Florida law provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a)

17

Summary judgment is an inappropriate stage at which to raise a failure-to-state-a-claim argument. *See* Fed. R. Civ. P. 12; Fed. R. Civ. P. 56; *Woynar v. City of Daytona Beach*, No. 6:10-cv-1458-Orl-28GJK, 2012 WL 1110064, *4 (M.D. Fla. Apr. 3, 2012) ("On summary judgment the pertinent issue is not the sufficiency of pleading but whether there is a genuine issue of material fact for trial"). Moreover, for the same reasons that the Court previously concluded that Davis had plausibly pled a constitutional claim for failure to protect, the Court would conclude that Davis pled facts that, taken as true, would plausibly show that Deputies Thompkins and Jones acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* DE 200 at 6; DE 221 at 2-3.

Defendants' Motion for Summary Judgment does not make any arguments relating to the adequacy of evidence supporting the negligence claims. Defendants do not contend that any of their arguments, evidence, or analysis supporting summary judgment on the merits of the constitutional claims also support summary judgment on the merits of the negligence claims. By the Court's reading, the closest that Defendants get to arguing the merits of the negligence claims is a single sentence in their Reply asserting, without citation to any evidence or Statement of Material Fact, that the "record evidence by no means supports" a finding of actual malice. *See* DE 237 at 9. It goes without saying that this single, conclusory sentence does not satisfy their burden on summary judgment. *See* Fed. R. Civ. P. 56(a), (c)(1). And in any event, a party may not raise an argument for summary judgment for the first time in a Reply. *See St. Breux v. U.S. Bank, Nat'l Ass'n*, 919 F. Supp. 2d 1371, 1379 (S.D. Fla. 2013) (stating that a new ground for summary judgment raised for the first time in a reply memorandum will not be considered).

Thus, Defendants have not shown that they are entitled to summary judgment on Davis's negligence claims.  Defendants' Motion for Summary Judgment as to Counts II, III, and IV is denied.  Given that no trial date has been set in this case and that no jury trials will be held in this District until at least October 13, 2020, should Defendants wish to amend their Summary Judgment Motion to seek summary judgment on the merits of any of the negligence claims, they shall, after conferral with Davis, file a Motion by **July 2, 2020**, seeking permission to do so.  *See* United States District Court Southern District of Florida Administrative Order 2020-41 (June 26, 2020).

## V.    CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion for Final Summary Judgment [DE 228] is **GRANTED IN PART AND DENIED IN PART**.  Deputies Thompkins and Jones are **GRANTED** summary judgment on Count I.  Summary judgment on Counts II, III, and IV is **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 29th day of June, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record